# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MAGNACHARGE LLC,<br><br>                  Plaintiff,<br><br>  v.<br><br>SAMSUNG ELECTRONICS CO., LTD.,<br>SAMSUNG ELECTRONICS AMERICA, INC.<br>and HARMAN INTERNATIONAL<br>INDUSTRIES, INC.,<br><br>                  Defendants. | C.A. No. 19-702-LPS<br><br>JURY TRIAL DEMANDED |

## DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT

*Of Counsel*:

ARNOLD & PORTER KAYE SCHOLER LLP
Matthew M. Wolf
Ali R. Sharifahmadian
Jin-Suk Park
601 Massachusetts Ave., NW
Washington, D.C. 20001-3743
Matthew.Wolf@arnoldporter.com
Ali.Sharifahmadian@arnoldporter.com
Jin.Park@arnoldporter.com


Dated: September 12, 2019

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Adam W. Poff (#3990)
Pilar G. Kraman (#5199)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com
pkraman@ycst.com

*Counsel for Defendants Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Harman International Industries, Inc.*

**TABLE OF CONTENTS**

Page

I. INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II. NATURE AND STAGE OF THE PROCEEDINGS .......................................................... 2

III. STATEMENT OF RELEVANT FACTS ............................................................................ 2

    A. The '402 Patent ................................................................................................... 2

    B. The Complaint Alleges Infringement With Respect To Irrelevant or Non-Mandatory Portions Of The Qi Standard ................................................................ 3

IV. LEGAL STANDARD ......................................................................................................... 6

V. ARGUMENT ....................................................................................................................... 9

    A. The Complaint Fails To Plausibly Allege That Compliance With The Qi Standard Necessarily Infringes The '402 Patent ................................................... 9

    B. The Complaint Fails to Plausibly Allege Infringement With Respect To Products That Do Not Purport To Comply With The Qi Standard ....................... 12

    C. The Complaint Fails To Plausibly Allege Infringement With Respect To Harman ................................................................................................................ 13

VI. CONCLUSION ................................................................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009) ................................................................................................ *passim*

*Bell Atl. Corp. v. Twombly*,
　550 U.S. 544 (2007) ................................................................................................ *passim*

*Bender v. LG Elecs. U.S.A., Inc.*,
　No. C 09-02114 JF (PVT), 2010 WL 889541 (N.D. Cal. Mar. 11, 2010) ..............................13

*Burtch v. Milberg Factors, Inc.*,
　662 F.3d 212 (3d Cir. 2011) ..................................................................................................8

*Fujitsu Ltd. v. Netgear, Inc.*,
　620 F.3d 1321 (Fed. Cir. 2010) ........................................................................................9, 10

*In re Burlington Coat Factory Sec. Litig.*,
　114 F.3d 1410 (3d Cir. 1997) ................................................................................................8

*Macronix Int'l. Co. v. Spansion Inc.*,
　4 F. Supp. 3d 797 (E.D. Va. 2014) ....................................................................................7, 8

*Mayne Pharma Int'l PTY Ltd. v. Merck & Co., Inc.*,
　No. 15-438-LPS-CJB, 2015 WL 7833206 (D. Del. Dec. 3, 2015) .......................................13

*Modern Telecom Sys., LLC v. TCL Corp.*,
　No. 17-583-LPS-CJB, 2017 WL 6524526 (D. Del. Dec. 21, 2017) .................................9, 12

*Network Managing Solutions., LLC v. AT&T Inc.*,
　No. CV 16-295-RGA-MPT, 2017 WL 5195863 (D. Del. Nov. 9, 2017) ....................8, 10, 11

*North Star Innovations, Inc. v. Micron Tech., Inc.*,
　No. 17-506-LPS-CJB, 2017 WL 5501489 (D. Del. Nov. 16, 2017) .................................9, 12

*Raindance Techs., Inc. v. 10X Genomics, Inc.*,
　No. CV 15-152-RGA, 2016 WL 927143 (D. Del. Mar. 4, 2016) ...........................................6

*Realtime Adaptive Streaming LLC v. Netflix, Inc.*,
　No. 17-1692-CFC-SRF, 2018 WL 6521978 (D. Del. Dec. 12, 2018) .......................10, 11, 13

*Stragent, LLC v. BMW of N. Am., LLC*,
　No. 6:16-cv-446-RWS-KNM, 2017 WL 2821697 (E.D. Tex. Mar. 3, 2017) .......................10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
 551 U.S. 308 (2007) ..................................................................................................8

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff Magnacharge's standards-based allegations of infringement fail to plausibly plead a claim for relief and are thus deficient. Rather than state facts that plausibly allege Defendants' products infringe one or more claims of the asserted patent, Magnacharge's Complaint purports to allege that products complying with the Qi Standard—an industry standard related to wireless power transfer—infringe the patent. Pleading infringement by reference to non-mandatory sections of an industry standard is not sufficient to meet the requirements of *Twombly* and *Iqbal*, where standard compliance alone would not establish that Defendants implemented the non-mandatory sections. But Magnacharge does just that. With respect to many claim limitations, its Complaint does nothing more than recite the language of the claim followed by citations to and quotes from sections of the Qi Standard that are merely *informative*, i.e., not mandatory. The Complaint includes no facts from which it would be plausible to conclude that the accused products implement the non-mandatory sections of the standard specification or otherwise are covered by the claims of the asserted patent.

Additionally, although Magnacharge improperly alleges infringement by products that purportedly operate according to the Qi Standard, the list of representative accused products in the Complaint includes Samsung products that do not even purport to be compliant with the Qi Standard. Hence, the Complaint fails to plausibly allege infringement with respect to such products. And with respect to Harman, the Complaint does not identify even a single accused Harman product.

Defendants, thus, respectfully submit that the Complaint should be dismissed in its entirety under Fed. R. Civ. P. 12(b)(6) for failure to adequately plead a claim of patent

infringement.  At a minimum, Magnacharge's claims against Harman and against Samsung wireless chargers that do not purport to comply with the Qi Standard should be dismissed.

## II.     NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff filed this lawsuit on April 17, 2019, against Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Harman International Industries, Inc. (collectively "Defendants").  The Complaint alleges one count of direct infringement with respect to U.S. Patent 7,417,402 ("the '402 patent") against the Defendants and includes no allegations of indirect infringement.  On May 7, 2019, the Court granted Plaintiff's stipulation to extend the time for Defendants to answer, move or otherwise respond to the Complaint until August 12, 2019.  D.I. 6 ("So Ordered" on Docket).  On August 2, 2019, the Court granted Plaintiff's second stipulation to extend the time for Defendants to answer, move or otherwise respond until September 12, 2019.  D.I. 8 ("So Ordered" on Docket).  Defendants now move to dismiss the Complaint in its entirety.

## III.    STATEMENT OF RELEVANT FACTS

### A.     The '402 Patent

The '402 patent is entitled "Non-Contact Type Battery Pack Charging Apparatus."  Ex. 1 at Title.[1]  Although the specification and figures purport to describe both a charging apparatus 100 and a battery pack 200, the "invention relates to a non-contact type battery pack *charging apparatus*," not to the battery pack.  *Id.* at Abstract (emphasis added).  This is further confirmed by the only independent claim in the patent, which is directed to "[a] non-contact type battery pack *charging apparatus*, comprising . . . ."  *Id*. at Claim 1 (emphasis added).

---

[1] The Exhibits ("Ex.") herein refer to the Exhibits attached to the Declaration of Adam W. Poff in Support of Defendants' Motion to Dismiss Plaintiff's Complaint filed contemporaneously.

B.  **The Complaint Alleges Infringement With Respect To Irrelevant or Non-Mandatory Portions Of The Qi Standard**

All of the allegations of infringement in the Complaint are made with reference to Version 1.2.2 of "The Qi Wireless Power Transfer System – Power Class 0 Specification – Parts 1 and 2: Interface Definitions," which is dated April 2016 (hereinafter "Qi Parts 1 & 2").[2] D.I. 1, ¶¶ 22-51. The Complaint does not make any allegations with reference to the actual structure or operation of Defendants' products.

The Qi Standard was developed by the Wireless Power Consortium, which is an "organization that aims to develop global standards for wireless power transfer in various application areas." Ex. 2 § 1.1, at 8. The standard specifications related to "Power Class 0"—i.e., the standard specifications that the Complaint refers to in paragraphs 22-51—are directed to "wireless charging of low and medium power devices, such as mobile phones and tablet computers." *Id.* The Qi Standard states that "[a]ll provisions in The Qi Wireless Power Transfer System, Power Class 0 Specification are mandatory, *unless specifically indicated as recommended, optional, note, example, or informative*." *Id.* § 1.4.1, at 10 (emphasis added). The Qi Standard further states that "[i]nformative text is set in italics, unless the complete Section is marked as informative." *Id.* § 1.8.2, at 17. Thus, the ***informative*** sections are not mandatory.

Many of the sections of the Qi Standard on which the Complaint relies to allege infringement are ***informative***, i.e., not mandatory. Still others appear directed to requirements of

---

[2] Although in paragraph 17 the Complaint also refers to Version 1.2.2 of "The Qi Wireless Power Transfer System – Power Class 0 Specification – Part 4: Reference Designs," this document is not otherwise mentioned or cited in the portions of the Complaint which purport to set out Magnacharge's allegations of direct infringement. D.I. 1, *compare* ¶ 17 *with* ¶¶ 22-51.

a Power Receiver (i.e., a mobile device that receives a charge wirelessly) instead of the requirements of a Power Transmitter of the Base Station (i.e., the charging device that is used to charge a mobile device wirelessly).

For example, in alleging that the accused products meet the limitation of "a power control unit for supplying Direct Current (DC) power to a main control unit and a variable-voltage frequency generation unit" in claim 1, the Complaint cites to and discusses Figure 43 in Section 8 of the Qi Parts 1 & 2 specification. D.I. 1, at ¶¶ 24-25. All of the information in Section 8 including Figure 43, however, is merely *informative*. Ex. 2 § 8, at 115 (entitled "System Efficiency (Informative)").

As another example, with respect to the limitation "a voltage comparison unit for detecting a voltage value input . . ." of claim 1, the Complaint attempts to allege infringement with reference to § 5.1.1 of the Qi Parts 1 & 2 specification. D.I. 1, ¶¶ 30-31. Section 5.1.1 (including Figure 17 which is also reproduced and relied on in paragraph 31), is also merely an *informative*, not mandatory, portion of the standard specification. Ex. 2 § 5.1.1 at 43 (entitled "Overview (informative)").

Additionally, Figures 4 and 5 that are reproduced in paragraph 31 of the Complaint relate to a *Power Receiver* rather than a *charging apparatus*, to which the claims of the '402 patent are directed.[3] *See* D.I. 1, ¶ 31 (title to Figures 4 & 5 describing them as "Functional block diagram for a [Baseline/Extended] Power Profile *Power Receiver*") (emphasis added). The Complaint

---

[3] Moreover, the standard specification explains that Figures 4 and 5 are merely exemplary, *i.e.,* not mandatory. *See* Ex. 2 § 3.1, at 23-24 (referring to both figures as "*example[s]* of a functional block diagram") (emphasis added). The Complaint includes no facts from which it would be plausible to conclude that Defendants' products implement one of these *exemplary* block diagrams.

4

includes no allegations why it would be plausible that the requirements of a power receiver nevertheless are covered by a claim directed to a *charging apparatus*, nor does it include any facts from which it would be plausible to conclude that Defendants—despite what is described in the standard specification—incorporate the features of a power receiver as described in Figures 4 and 5 in a charging apparatus.

The Complaint also wholly or partly relies on the ***informative*** discussion in the standard specification when alleging infringement with respect to the limitations "a current comparison unit for detecting the voltage value input . . .," *see* D.I. 1, ¶¶ 32-33,[4] "a voltage detection unit . . .," *see id.* ¶¶ 34-35 (citing informative § 5.1.1), and "a current detection unit . . .," *see id.* ¶¶36-37 (citing informative § 5.1.1), in claim 1.  With respect to dependent claim 2, again, the only factual averments that this claim is allegedly met are citations to the same ***informative*** § 5.1.1.  *See id.* ¶¶ 42-43.[5]

To illustrate the point, claim 1 of the '402 patent is reproduced below with the limitations for which the Complaint relies on informative sections of the standard specification italicized in bold:

> 1. A non-contact type battery pack charging apparatus, comprising:

---

[4] Although ¶ 33 purports to cite to § 3.1.4 of the Qi Parts 1 & 2 specification, this is apparently a typo as the substance that is quoted is actually from informative § 5.1.1 at pages 45-46. *Compare* D.I. 1, ¶ 33 *with* Ex. 2 § 5.1.1, at 45-46.  Regardless, § 3.1.4 is directed to a Power Receiver and not a Power Transmitter.  The Complaint includes no allegations why it would be plausible that the requirements of a power receiver are covered by a claim directed to a *charging apparatus*, nor does it include any facts from which it would be plausible to conclude that Defendants incorporate the features of a power receiver as described in § 3.1.4 in a charging apparatus.

[5] The Complaint also purports to allege infringement with respect to dependent claims 4 and 5. *See* D.I. 1, ¶¶ 44-51.  These allegations are, at a minimum, also deficient because they necessarily depend on the inadequate allegations with respect to claim 1.

5

> *a power control unit for supplying Direct Current (DC) power to a main control unit and a variable-voltage frequency generation unit;*
>
> the variable-voltage frequency generation unit for converting the DC power supplied from the power control unit into a frequency having an arbitrary voltage value and outputting the frequency to a magnetic field generation unit under the control of the main control unit;
>
> the magnetic field generation unit for receiving the frequency output from the variable-voltage frequency generation unit and radiating a magnetic force corresponding to the frequency to the outside;
>
> *a voltage comparison unit for detecting a voltage value input to the magnetic field generation unit and a voltage value of the magnetic field generation unit, comparing the voltage values with each other, and outputting a voltage comparison value to the main control unit;*
>
> *a current comparison unit for detecting the voltage value input to the magnetic field generation unit and the voltage value of the magnetic field generation unit, converting the voltage values into current values, comparing the current values with each other, and outputting a current comparison value to the main control unit;*
>
> *a voltage detection unit for detecting a voltage value output from the variable-voltage frequency generation unit and outputting the voltage value to the main control unit;*
>
> *a current detection unit for detecting a voltage value of the magnetic field generation unit, converting the voltage value into a current value, and outputting the current value to the main control unit;* and
>
> the main control unit for receiving signals output from the current comparison unit, the voltage comparison unit, the voltage detection unit and the current detection unit and controlling the operations of the variable-voltage frequency generation unit.

## IV. LEGAL STANDARD

Claims of patent infringement are subject to the same standard as other causes of action and must meet the requirements set forth in *Twombly* and *Iqbal*. *See, e.g.*, *Raindance Techs., Inc. v. 10X Genomics, Inc.*, No. CV 15-152-RGA, 2016 WL 927143, at *2 (D. Del. Mar. 4, 2016) (applying the *Twombly* and *Iqbal* standards and dismissing the allegations of direct infringement). In establishing these requirements, the Supreme Court explicitly rejected the notion that a claim should only be dismissed when it is beyond a doubt that a plaintiff can prove "no set of facts" to support it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007) ("The

6

phrase ['no set of facts'] is best forgotten as an incomplete, negative gloss . . . ."). Instead, a claim must provide "not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id*. at 555 n.3. The complaint must include "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. Facial plausibility is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

The requirements of *Twombly* and *Iqbal* are threshold requirements, which should be evaluated prior to commencement of any aspect of the case. Indeed, both *Twombly* and *Iqbal* expressly rejected the idea that careful case management could cure a deficient complaint. *See Twombly*, 550 U.S. at 559 (discussing the issues and enormous expense of the case management approach and stating "[i]t is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through 'careful case management'") (citation omitted); *Iqbal*, 556 U.S. at 685 ("Our rejection of the careful-case-management approach . . ."); *see also, e.g., Macronix Int'l. Co. v. Spansion Inc.*, 4 F. Supp. 3d 797, 803 (E.D. Va. 2014) ("[I]t is high time that counsel in patent cases do all of that work before filing a complaint").

A complaint must therefore provide both the "what" and the "how" of the alleged infringement at the outset and set forth "sufficient factual matter" that, if accepted as true, would be sufficient to state a claim "that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). As one court has observed (in applying the *Twombly* and *Iqbal* standard to a complaint before the abrogation of Form 18):

> Satisfying the requirements of *Twombly* and *Iqbal*, of course, will require counsel to focus complaints only on viable claims. Thus, before filing a complaint, counsel must ascertain exactly what

7

> claims should [be] alleged to be infringed and how they are
> infringed. That can be done with brevity and clarity if counsel
> know at the outset their theories of infringement and what can, and
> cannot, be said about allegedly infringing conduct. That, in turn,
> may well, indeed likely will, require expert assistance. And, it will
> mean taking great care when crafting a succinct, but sufficient,
> patent complaint. But, that is not asking too much.

*Macronix*, 4 F. Supp. 3d at 803.

The Third Circuit applies a three-part test to guide district courts in evaluating a motion to dismiss. *See Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). First, the Court identifies the elements needed to state a claim. *Id.* Second, the Court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. *Id.* Finally, the Court determines whether the facts contained in the pleading could give rise to a plausible claim for relief. *Id.*

Ordinarily, a district court ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) cannot consider matters outside the pleadings. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). Courts may, however, consider documents that are incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see also In re Burlington* 114 F.3d at 1426 (stating that a document "integral to or explicitly relied upon in the complaint" may be considered without the motion to dismiss becoming a motion for summary judgment); *Network Managing Solutions., LLC v. AT&T Inc.*, No. CV 16-295-RGA-MPT, 2017 WL 5195863, at *4 (D. Del. Nov. 9, 2017) (same).

V. ARGUMENT

A. The Complaint Fails To Plausibly Allege That Compliance With The Qi Standard Necessarily Infringes The '402 Patent

In the context of alleging a claim for direct patent infringement, *Twombly* and *Iqbal* require Magnacharge to plead facts that plausibly indicate that the accused products practice each of the limitations found in the asserted claims. *North Star Innovations, Inc. v. Micron Tech., Inc.*, No. 17-506-LPS-CJB, 2017 WL 5501489, at *1 (D. Del. Nov. 16, 2017); *Modern Telecom Sys., LLC v. TCL Corp.*, No. 17-583-LPS-CJB, 2017 WL 6524526, at *2 (D. Del. Dec. 21, 2017). Yet, the Complaint does not plead any facts regarding the structure or operation of any specific or exemplary accused product. Instead, the Complaint alleges that "Defendants . . . directly infringe one or more claims of the '402 patent by selling, offering to sell, making, and/or importing non-contact type battery pack charging products *that operate according to the Qi Standard* . . . ." D.I. 1, at ¶ 21 (emphasis added). Subsequently, the so-called substantive allegations in the Complaint are comprised of a paragraph that recites a claim limitation (*see, e.g.*, *id.* at ¶¶ 24, 26, 28, 30, 32, 34, 36, 38, 42, 46, 50), followed by a paragraph that quotes from and cites to a portion of a document that is purported to be part of the Qi Standard, respectively (*see, e.g.*, *id.* at ¶¶ 25, 27, 29, 31, 33, 35, 37, 39, 43, 47, 51).

As the Federal Circuit held in *Fujitsu Ltd. v. Netgear, Inc.*, proving infringement by reference to an industry standard is not permitted where "the relevant section of the standard is optional, and standards compliance alone would not establish that the accused infringer chooses to implement the optional section." 620 F.3d 1321, 1327-28 (Fed. Cir. 2010). In such circumstances, "the patent owner must compare the claims to the accused products or, if appropriate, prove that the accused products implement any relevant optional sections of the

9

standard." *Id.* at 1328. Although *Fujitsu* involved the standard of proof at the summary judgment stage, district courts have applied this substantive rule—"that a patentee may rely on standard compliance to show infringement only if the patent covers every possible implementation of the standard"—at the motion to dismiss stage. *Stragent, LLC v. BMW of N. Am., LLC*, No. 6:16-cv-446-RWS-KNM, 2017 WL 2821697, at \*6 (E.D. Tex. Mar. 3, 2017); *see also Network Managing*, 2017 WL 5195863, at \*4-5; *Realtime Adaptive Streaming LLC v. Netflix, Inc.*, No. 17-1692-CFC-SRF, 2018 WL 6521978, at \*14-15 (D. Del. Dec. 12, 2018). Thus, to have complied with the requirements of *Twombly* and *Iqbal*, Magnacharge was required to plead facts from which it would be plausible to conclude that the claims cover "every possible implementation of [the] standard," or that the accused products implement any relevant optional or informative sections of the standard. *See Fujitsu*, 620 F.3d at 1328; *Stragent*, 2017 WL 2821697 at \*6.

Despite this clear requirement, and as discussed in Section III.B, *supra*, the only allegations in the Complaint for many of the claim limitations are citations to sections of the standard specification that are merely *informative*, i.e., optional in the context of the *Fujitsu* framework. As exemplified by the decision in *Stragent*, because Magnacharge relies on **informative** sections of the standard specification and "has adduced no facts suggesting that the asserted claims 'cover every possible implementation of [the Qi Standard],' [Magnacharge] must connect either the accused products to the asserted claims, or the [Qi Standard] to the asserted claims." *Stragent*, 2017 WL 2821697 at \*5. Thus, Magnacharge has failed to adequately plead patent infringement here because (i) it has adduced no facts that the asserted claims cover every possible implementation of the Qi Standard, (ii) it has adduced no facts that the accused products

10

implement the *informative* sections of the Qi Standard specification, and (iii) it does not connect the accused Qi-compliant products to the asserted claims.

Moreover, Magnacharge's Complaint is substantively different from the ones in *Network Managing* and *Realtime Adaptive*, where direct infringement allegations based on a standard were found adequate. In *Network Managing*, Chief Magistrate Thynge held that the second amended complaint adequately pleaded direct infringement because it included information to show what the standard *required* and further included information about how the patent covered the required portions of the standard. *Network Managing*, 2017 WL 5195863 at *5.[6] Here, the Complaint fails to show what the Qi Standard *requires*, and instead cites to portions of the standard specification that are merely *informative*. *See, e.g.*, D.I. 1, at ¶¶ 25, 31, 33, 35, 37, 43. In *Realtime Adaptive*, Magistrate Fallon declined to dismiss the complaint because the plaintiff had "alleged how compliance with the [standard] is connected to infringement of claim 1 of [the asserted patent]" and alleged facts to show "how adherence to the [standard] also comports with each claim limitation in claim 1 of [the asserted patent]." *Realtime Adaptive*, 2018 WL 6521978 at *15. Here, the Complaint relies on sections of the standard specification that are merely *informative*—as opposed to relying only on mandatory portions of the standard—and fails to plead facts that make it plausible that adherence to the standard comports with each limitation of the asserted claims.

In sum, in relying on *informative* sections of the standard document, the Complaint fails to adequately plead direct infringement with respect to any of the Defendants for at least three

---

[6] Even then, Magistrate Thynge found the complaint deficient because it did not clearly delineate the specific versions of the standard that allegedly were covered by the claims. *Network Managing*, 2017 WL 5195863, *5.

reasons. First, the Complaint fails to plead facts that make it plausible that the claims cover every possible implementation of the Qi standard. Second, the Complaint fails to plead facts that make it plausible that the accused products incorporate the informative sections of the Qi Standard specification cited in the Complaint. Third, the Complaint fails to compare the claims to the actual accused products—as opposed to the Qi Standard—and fails to plead facts that make it plausible that the accused products meet all the claim limitations.

### B. The Complaint Fails To Plausibly Allege Infringement With Respect To Products That Do Not Purport To Comply With The Qi Standard

Although the Complaint purports to accuse infringement by "non-contact type battery pack charging products that operate according to the Qi Standard," D.I. 1, ¶ 21, the specifically identified exemplary Samsung products are not so limited, *see id.* More particularly, while some of the exemplary products specifically identified in the Complaint purport to be "Qi-certified," several of the products do not. *Compare* Exs. 3-9 (noting or referring to Qi certification) *with* Exs. 10-13 (no representation regarding Qi compatibility or certification).[7] Despite identifying and referring to these non-Qi-compliant products as allegedly infringing, the Complaint includes no factual averments from which it would be plausible to conclude that these products infringe. *See, e.g.*, *North Star Innovations*, 2017 WL 5501489 at *1; *Modern Telecom*, 2017 WL 6524526 at *2. Thus, at a minimum, the Complaint fails to plausibly plead infringement with respect to any wireless charger that does not purport to be or is not compliant with the Qi Standard.

---

[7] The exhibits attached here are printouts of the web pages specifically referred to in the Complaint at paragraph 21.

### C. The Complaint Fails To Plausibly Allege Infringement With Respect To Harman

The Complaint names three different entities: Samsung Electronics Company, Ltd ("SEC"), Samsung Electronics America, Inc. ("SEA"), and Harman International Industries, Inc. ("Harman"), and collectively identifies the three entities as "Samsung" or "Defendants." D.I. 1, at 1. All allegations of infringement in the Complaint are against "Defendants" or Defendants' "Accused Instrumentalities" without differentiating between any of the three entities. *See* D.I. 1, ¶¶ 21 et seq. When alleging direct infringement, however, Magnacharge is required to identify which particular defendant or defendants are responsible for which allegedly infringing products. Magnacharge has failed to do so here. *See, e.g.*, *Mayne Pharma Int'l PTY Ltd. v. Merck & Co., Inc.*, No. 15-438-LPS-CJB, 2015 WL 7833206, at *4-5 (D. Del. Dec. 3, 2015) (dismissing complaint against subsidiary because referring to all defendants in the aggregate failed to plausibly allege infringing activity by the subsidiary).

The Complaint does not identify any allegedly infringing Haman products. *See Realtime Adaptive*, 2018 WL 6521978 at * 13 (noting that to adequately plead infringement, the complaint must "name[] and specifically identif[y] products or product components" that allegedly infringe); *Bender v. LG Elecs. U.S.A., Inc.*, No. C 09-02114 JF (PVT), 2010 WL 889541, at *6 (N.D. Cal. Mar. 11, 2010). All of the so-called exemplary products identified in paragraph 21 of the Complaint are Samsung products. But the Complaint fails to aver any facts that would justify holding Harman liable for Samsung products. Accordingly, the Complaint should be dismissed as against Harman.

## VI. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint in its entirety for failure to state a claim based on the Complaint's improper reliance on non-mandatory sections of the Qi Standard. At a minimum, the Complaint should be dismissed with respect to Harman because no Harman products are accused, and with respect to Samsung wireless chargers that do not purport to comply with the Qi Standard because there are no allegations against the products that are not based on the Qi Standard.

Dated: September 12, 2019

*Of Counsel*:

ARNOLD & PORTER KAYE
SCHOLER LLP

Matthew M. Wolf
Ali R. Sharifahmadian
Jin-Suk Park
601 Massachusetts Ave., NW
Washington, D.C. 20001-3743
(202) 942-5000
matthew.wolf@arnoldporter.com
ali.sharifahmadian@arnoldporter.com
jin.park@arnoldporter.com

Respectfully submitted,

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

*/s/ Adam W. Poff*

Adam W. Poff (#3990)
Pilar G. Kraman (#5199)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com
pkraman@ycst.com

*Counsel for Defendants Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Harman International Industries, Inc.*

**CERTIFICATE OF SERVICE**

I, Adam W. Poff, hereby certify that on September 12, 2019, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

>Timothy Devlin, Esquire
>James M. Lennon, Esquire
>Devlin Law Firm LLC
>1526 Gilpin Avenue
>Wilmington, DE 19806
>*tdevlin@devlinlawfirm.com*
>*jlennon@devlinlawfirm.com*
>
>*Attorneys for Plaintiff*

I further certify that on September 12, 2019, I caused a true and correct copy of the foregoing document to be served by e-mail on the above-listed counsel of record.

>YOUNG CONAWAY STARGATT
> & TAYLOR, LLP
>
>*/s/ Adam W. Poff*
>Adam W. Poff (No. 3990)
>Pilar G. Kraman (No. 5199)
>Rodney Square
>1000 North King Street
>Wilmington, Delaware 19801
>(302) 571-6600
>*apoff@ycst.com*
>*pkraman@ycst.com*
>
>*Attorneys for Defendants*