**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| MAGNACHARGE LLC,<br><br>    Plaintiff,<br><br>  v.<br><br>SAMSUNG ELECTRONICS CO., LTD.;<br>SAMSUNG ELECTRONICS AMERICA,<br>INC; HARMAN INTERNATIONAL<br>INDUSTRIES, INC.,<br><br>    Defendants. | Civil Action No. 1:19-cv-00702-LPS<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO**
**DEFENDANT'S MOTION (D.I. 9) TO DISMISS PLAINTIFF'S COMPLAINT**

<u>*/s/ James M. Lennon*</u>
James M. Lennon
Timothy Devlin (#4241)
Devlin Law Firm LLC
1526 Gilpin Avenue
Wilmington, DE  19801
Telephone: (302) 449-9010
tdevlin@devlinlawfirm.com

Attorneys for Plaintiff
Magnacharge LLC

DATED:   October 10, 2019

1

# TABLE OF CONTENTS

I.   NATURE AND STAGE OF PROCEEDINGS ..................................................... 1

II.  INTRODUCTION AND SUMMARY OF RELEVANT FACTS ......................................... 1

III. SUMMARY OF THE ARGUMENT ............................................................ 2

IV.  ARGUMENT ........................................................................... 4

   A.   The Complaint Sufficiently Alleges Infringement of the '402 Patent Based on
Compliance with the Qi Standard ........................................................ 4

      1.   The Complaint Identifies Mandatory Sections of the Qi Standard that the Accused
Instrumentalities Implement and, Therefore Infringe the '402 Patent.................................... 4

      2.   Even Non-Mandatory Sections of a Standard May Form the Bases of a Sufficient
Infringement Pleading.................................................................... 5

   B.   As the Complaint Properly Alleges, the Accused Instrumentalities Comply with the Qi
Standard and therefore Infringe ........................................................ 7

      1.   A Complaint Need Only Identify One Exemplary Product.......................................... 7

      2.   The Well-Pled Facts of a Complaint Must Be Assumed True in the Context of a Rule
12(b)(6) Motion to Dismiss ............................................................... 8

   C.   The Complaint Plausibly Alleges Infringement with Respect to *All* Defendants,
including Harman........................................................................ 9

V.   CONCLUSION.......................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................ 9

*Bell Atlantic Corporation v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................ 8

*Fujitsu Ltd. v. Netgear Inc.*,
   620 F.3d 1321 (Fed. Cir. 2010) ...................................................................... 5

*Koninklijke Philips NV v. ASUSTeK Computer Inc.*,
   C.A. No. 15-1125-GMS,
   2016 U.S. Dist. LEXIS 147169 (D. Del. Oct. 25, 2016) ................................ 8

*Liqwd, Inc. v. L'Oréal USA, Inc.*,
   C.A. No. 17-14-JFB-SRF,
   2019 U.S. Dist. LEXIS 15276 (D. Del. Jan. 30, 2019) ................................... 8

*Mayne Pharma Int'l PTY Ltd. V. Merck & Co., Inc.*,
   C.A. No. 15-438-LPS-CJB,
   2015 U.S. Dist. LEXIS 162912 (D. Del. December 3, 2015) .......................... 9

*Network Managing Solutions, LLC v. AT&T Inc.*,
   C.A. No. 16-295-RGA-MPT,
   2017 U.S. Dist. LEXIS 185603 (D. Del. Nov. 9, 2017) ................................. 6

*Phillips v. Cnty. of Allegheny*,
   515 F.3d 224 (3d Cir. 2008) ............................................................................ 8

*Promos Techs., Inc. v. Samsung Elecs. Co.*,
   C.A. No. 18-307-RGA,
   2018 U.S. Dist. LEXIS 186276 (D. Del. Oct. 31, 2018) ................................ 8

*Realtime Adaptive Streaming LLC v. Netflix, Inc.*
   C.A. No. 17-1692-CFC-SRF,
   2018 U.S. Dist. LEXIS 209132 (D. Del. Dec. 12, 2018) ........................... 6, 7

*Stragent LLC v. BMW of North America*
   C.A. No. 6:16-cv-446-RWS-KNM,
   2017 U.S. Dist. LEXIS 156084 (E.D. Tex. Mar. 3, 2017) .............................. 6

*Umland v. PLANCO Fin. Servs.*,
   542 F.3d 59 (3d. Cir. 2008) ............................................................................. 8

**Statutes**

Fed. R. Civ. P. 12(b)(6).................................................................................................................. 8

Plaintiff Magnacharge LLC ("Magnacharge") submits this answering brief in opposition to Defendants Samsung Electronics Co., Ltd.'s, Samsung Electronics America, Inc.'s, and Harman International Industries, Inc.'s (collectively, "Samsung") Motion to Dismiss Plaintiff's Complaint (D.I. 9).

## I.      NATURE AND STAGE OF PROCEEDINGS

Magnacharge filed a complaint against Samsung on April 19, 2019 for Samsung's infringement of U.S. Patent No. 7,417,402 ("the '402 patent") based on offers to sell and sales of products operating in according with the industry standard, known as "Qi"—pronounced "chee"—an open, universal wireless charging standard for interoperability across rechargeable electronic devices (hereinafter "the Qi Standard"). (See D.I. 1 at ¶¶ 11, 15, 21-51).

On May 2, 2019 Samsung requested that Magnacharge file a stipulation and proposed order extending the deadline to respond to the complaint by sixty days because Samsung needed "additional time to investigate the allegations of the Complaint." (D.I. 6.) On August 2, 2019 Samsung requested that Magnacharge file a second stipulation and proposed seeking an additional extension of the deadline to respond to the complaint, by thirty days, because Samsung needed "additional time to investigate the allegations of the Complaint." (D.I. 8) Both proposed orders were granted, ultimately extending Samsung's deadline to respond to the April 19th complaint until September 12, 2019. In lieu of answering the complaint, Samsung filed its motion ("the Motion") on September 12, 2019. (D.I. 9.) Prior to filing the Motion, Samsung did not seek clarification about the allegations as pled or otherwise attempt to inform Magnacharge that Samsung did not practice the asserted claims.

A Rule 16 conference has not been scheduled in this matter.

## II.     INTRODUCTION AND SUMMARY OF RELEVANT FACTS

Magnacharge's well-pled, standards-based allegations of infringement meet and exceed

the requirements for pleading a claim for patent infringement.

The Complaint alleges Samsung's infringement of the '402 patent.  The '402 patent resulted from the pioneering efforts of Inventors Jin-Sun Kim and Young-Jun Kim in the area of non-contact, magnetic field battery charging.  (D.I. 1 at ¶ 12.)  These efforts resulted in the development of a novel method and apparatus for non-contact type battery pack charging.  (*Id.*) At the time of these pioneering efforts, the most widely implemented technology used to address battery charging for rechargeable electronic devices was a technology in which the charging terminals of a battery pack come in electrical contact with the charging terminals of a battery pack charging apparatus.  (*Id.*)

Because of the significant advantages that can be achieved through the use of the claimed innovations, the '402 patent presents significant commercial value for, and usage by, companies like Samsung.  (*Id.* at 14.)  Indeed, the claimed innovations are so substantial that these ideas were implemented through the Qi Standard.  (*Id.* at 15.)

## III.    SUMMARY OF THE ARGUMENT

The Complaint articulates how devices compliant with the Qi Standard, such as the exemplary Samsung products identified in the Complaint, infringe the '402 patent.  Pleading infringement by reference to sections of an industry standard—*even non-mandatory sections*—is sufficient to meet the requirements of *Twombly* and *Iqbal*.  Setting aside for the moment Samsung's mischaracterization of the law, Samsung mischaracterizes the pleadings themselves. Every element of every asserted claim is compared and connected to at least a mandatory section of the Qi Standard.  While "informative text" is also cited, the Complaint does not map the claims to merely optional/non-mandatory features of the Specification without also citing to mandatory sections.  The limited reference to "informative text" in the Complaint simply provides further information on the mandatory features of the Qi Standard mapped to the

asserted claims.  Even without the cited "informative text," it is clear from the Complaint that Qi compliant devices meet the requirements of the asserted claims.

It is also notably clear under the law, contrary to Samsung's assertions, that an accused product's advertised compatibly with an industry standard may be pled based on inferred compliance with even non-mandatory sections of the standard.  Whether a product maker opts out of a non-mandatory feature is not a question to be resolved at the pleadings stage.

Samsung next takes issue with whether certain exemplary products can be identified as Qi compliant.  The exemplary products identified in the Complaint (referred to in the complaint as "Accused Instrumentalities" (see D.I. 1 at ¶ 21)) are alleged—and understood—to be Qi compatible/compliant.[1]  Samsung suggestion to the contrary is off-base.  First, Samsung ignores the requirement that facts of a complaint are presumed true at this stage.  Second, Samsung posits its challenge by arguing that the words "Qi certified" or the like are absent from certain product literature attached to the complaint.  There is no dispute that at least some of Samsung's products are Qi compliant.  Moreover, determining the full universe of Samsung products at issue is neither required nor appropriate at this initial pleadings stage.

Similarly, Samsung offers no explanation for why the Qi-compliant wireless charging products of its subsidiary, Harman, do not have the same Qi-compliant features mapped in the Complaint.   All of the Samsung Defendants, including the Harman subsidiary, are on notice that Qi-compliant charging devices infringe the asserted claims of the '402 patent.  Magnacharge is also entitled to explore through discovery, what role Harman plays in the marking, sale, and

[1] Product documentation showing the Qi compatibility of Samsung's wireless charging products is available online, allowing the Court to take judicial notice of these facts which refute Samsung's suggestion to the contrary.  The URLs for this documentation and corresponding printouts of the same are included in the Declaration of James M. Lennon in Support of Plaintiff's Answering Brief in Opposition to Defendants' Motion to Dismiss Plaintiff's Complaint, filed contemporaneously.  Citation to Exhibits ("Ex.") herein refers to the Exhibits attached to the foregoing Declaration.

3

distribution of Samsung-branded Qi-compliant charging devices.  In sum, Samsung offers no

challenge upon which the Court may grant the Motion.

Samsung also argues that:

. . . the Complaint includes no allegations why it would be plausible that the requirements of a power receiver nevertheless are covered by a claim directed to a *charging apparatus*, nor does it include any facts from which it would be plausible to conclude that Defendants—despite what is described in the standard specification—incorporate the features of a power receiver as described in Figures 4 and 5 in a charging apparatus.

(D.I. 10 at 4-5.)  Samsung attempts to turn the pleading standard on its head by misconstruing the

hallmark term "plausible".   It is, of course, plausible that the claimed "*non-contact type battery*

*pack charging apparatus*" may include "the requirements of a *power receiver*" and Samsung

offers no explanation to the contrary.  It is further plausible that the products of "Defendants . . .

incorporate the features of a power receiver . . ."  Again, Samsung offers no explanation to the

contrary.

## IV.    ARGUMENT

### A.    The Complaint Sufficiently Alleges Infringement of the '402 Patent Based on Compliance with the Qi Standard

#### 1.    The Complaint Identifies Mandatory Sections of the Qi Standard that the Accused Instrumentalities Implement and, Therefore Infringe the '402 Patent

Samsung identifies a few portions of the Qi Standard recited in the Complaint to argue

that infringement is premised on "non-mandatory" features which have not been proven to exist

in the accused products.  However, Magnacharge does not claim infringement based solely on

non-mandatory portions of the standard.  Several portions of the Qi Standard cited in the

Complaint are mandatory, including the Power Transmitter described at Section 1.5 of Qi Parts 1

& 2, the Power Receiver over-voltage protection described in Section 3.2.4 of Qi Parts 1 & 2, the

Power Transmitter described in Section 5.1.2.3. of Qi Parts 1 & 2, and the Charge Status Packet

described at Section 5.2.3.5 of Qi Parts 1 & 2. (D.I. 1 ¶¶ 25, 27, 47, 51.).  The Complaint alleges

that the Accused Instrumentalities comply with the mandatory portions of the Qi Standard and

infringe on claims 1, 2 and 4 of the '402 patent. (D.I. 1 ¶¶ 22, 40, 44.)  It is therefore incorrect to

argue, as Samsung does, that "the Complaint relies on sections of the standard specification that

are merely *informative*—as opposed to relying only on mandatory portions of the standard—and

fails to plead facts that make it plausible that adherence to the standard comports with each

limitation of the asserted claims." (D.I. 10 at 11.)  For this reason alone, Samsung's motion must

be denied.

>    **2.    Even Non-Mandatory Sections of a Standard May Form the Bases of a Sufficient Infringement Pleading**

To the extent that the Complaint does cite to non-mandatory portions of the Qi Standard,

Samsung is incorrect to argue that the Complaint must allege that "the claims cover 'every

possible implementation of [the] standard,' or that the accused products implement any relevant

optional or informative sections of the standard" in order to survive a 12(b)(6) motion.  (D.I. 10

at 10.)

In ruling on an appeal of a motion for summary judgment in *Fujitsu Ltd. v. Netgear Inc.*,

620 F.3d 1321, 1327 (Fed. Cir. 2010), the Federal Circuit determined that "a district court may

rely on an industry standard in analyzing infringement."  As a corollary, the court also held in

cases in which proof of infringement is based on compliance with optional sections of the

standard "it is not sufficient for the patent owner to establish infringement by arguing that the

product admittedly practices the standard, therefore it infringes." *Id.* at 1328.  In such cases, a

plaintiff has an additional burden of proof to "compare the claims to the accused products or, if

appropriate, prove that the accused products implement any relevant optional sections of the

standard." *Id.* at 1328.  The court did little more than restate the obvious: that non-mandatory

sections of a standard are insufficient proof of infringement without evidence indicating that

those sections were actually followed.

In an effort to make a distinct logical leap from this holding, Samsung now argues that "[p]leading infringement by reference to non-mandatory sections of an industry standard is not sufficient to meet the requirements of *Twombly* and *Iqbal*, where standard compliance alone would not establish that Defendants implemented the non-mandatory sections." (D.I. 10 at 1.) However, neither *Fujitsu* nor the handful of cases that address its significance at the pleadings stage have defined its requirements so broadly.  Notably, the court in *Realtime Adaptive Streaming LLC v. Netflix, Inc.* rejected the argument, similar to the one advanced here by Samsung, that a complaint that did not allege "how the use of a standard infringes the claims" was not in compliance with *Fujitsu*. *Realtime Adaptive Streaming LLC v. Netflix, Inc.* C.A. No. 17-1692-CFC-SRF, 2018 U.S. Dist. LEXIS 209132 at *38 (D. Del. Dec. 12, 2018).  The court reasoned that "[a]t this stage, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to the defendant" and found that "at the pleadings stage, Realtime's allegations are sufficient to withstand dismissal." *Id.* at *38.

Samsung also relies on *Stragent LLC v. BMW of North America*, while ignoring the fact that the case in no way involves reliance on non-mandatory portions of the relevant standard. Instead, the court determined only that *Fujitsu* required the Plaintiff to "connect either the accused products to the asserted claims, or the AUTOSAR standard to the asserted claims." *Stragent LLC v. BMW of North America* C.A. No. 6:16-cv-446-RWS-KNM, 2017 U.S. Dist. LEXIS 156084 at *9 (E.D. Tex. Mar. 3, 2017).  The court found that the plaintiff's "threadbare" complaint "identified no common element between the AUTOSAR Standard and the asserted claims, nor does it explain how the accused products, by complying with the AUTOSAR Standard, also infringe the asserted claims." *Id.* at 13.  *Network Managing Solutions, LLC v. AT&T Inc.*, C.A. No. 16-295-RGA-MPT, 2017 U.S. Dist. LEXIS 185603* (D. Del. Nov. 9, 2017), which involved a complaint that relied on an outdated standard, is similarly inapposite.

Samsung cites paragraphs 24-25, 30-31, 32-33, and 42-43 of the complaint as allegations regarding patent claim elements where the pleadings are said to be deficient for relying on non-mandatory sections.  (D.I. 10 at 4-5).  However, in each instance the complaint expressly asserts that the Accused Instrumentalities include each of these recited elements.  (D.I. 1 at 24-43.)  The complaint then goes on to provide "a step-by-step analysis to allege . . . compliance with a standard," which should be "accepted as true [because] it would be premature at this stage for the court to make recommendations on issues which will undoubtedly be the subject of fact and expert discovery." *Realtime Adaptive*, at *39.

As stated above, Magnacharge's complaint does not rely solely on non-mandatory portions of the Qi Standard.  However, even those portions of the Complaint that cite non-mandatory portions of the Qi Standard are sufficient, as the very cases that Samsung has cited establish.  The Complaint both connects the accused products to the asserted claims and connects the accused products to the Qi Standard.  It is therefore a mischaracterization of the law to state that Magnacharge must plead "that the claims cover 'every possible implementation of the standard,' or that the accused products implement any relevant optional or informative sections of the standard." (D.I. 10 at 14.)

Magnacharge has alleged that its patent covers mandatory as well as non-mandatory portions of the Qi Standard and that Samsung manufactures and sells products that comply with those portions of the Qi Standard.  At the pleadings stage, no more is required.

### B.    As the Complaint Properly Alleges, the Accused Instrumentalities Comply with the Qi Standard and therefore Infringe

### 1.    A Complaint Need Only Identify One Exemplary Product

"[C]ourts in this district permit a plaintiff's "use of exemplary—rather than exhaustive—lists of products and claims" if the allegations in the pleadings are supplemented with detailed infringement contentions. *Liqwd, Inc. v. L'Oréal USA, Inc.*, C.A. No. 17-14-JFB-SRF, 2019 U.S.

Dist. LEXIS 15276, at *9 -10 (D. Del. Jan. 30, 2019) (*quoting Koninklijke Philips NV v. ASUSTeK Computer Inc.*, C.A. No. 15-1125-GMS, 2016 U.S. Dist. LEXIS 147169 at *3-4 (D. Del. Oct. 25, 2016)); *see also Promos Techs., Inc. v. Samsung Elecs. Co.*, C.A. No. 18-307-RGA, 2018 U.S. Dist. LEXIS 186276, at *2 (D. Del. Oct. 31, 2018) ("Under Twombly and Iqbal, pleading an exemplary product is sufficient to satisfy Rule 12(b)(6).").

Here, Magnacharge has identified eleven products sold and/or manufactured by Samsung which it alleges infringe the '402 patent. This list of products is intended to be exemplary, rather than exhaustive, and as such satisfies the pleading requirements as set forth in *Liqwd* and other case law. The list of products, like those identified by the plaintiff in *Philips*, are sufficient to provide both Samsung and its subsidiary Harman with fair notice of Magnacharge's claim, which is all that is required at the pleadings stage.

### 2. The Well-Pled Facts of a Complaint Must Be Assumed True in the Context of a Rule 12(b)(6) Motion to Dismiss

The standard of review for pleadings on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is well-established. A court reviewing a complaint on a Rule 12(b)(6) motion "accept[s] all factual allegations as true, construe[s] the complaint in the light most favorable to the plaintiff, and determine[s] whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Koninklijke Philips*, 2016 U.S. Dist. LEXIS at *9 (*citing Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).

In determining sufficiency of the pleadings, a court will determine whether the factual allegations are plausible. *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 556 (2007). Further, "[t]he United States Supreme Court's emphasis on "plausibility" has been interpreted to mean that a complaint's factual allegations must be enough to raise a right to relief above the speculative level." *Umland v. PLANCO Fin. Servs.*, 542 F.3d 59, 64 (3d. Cir. 2008) "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

8

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Further, "the plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.

As stated above, Magnacharge has alleged that the claimed innovations of the '402 patent were implemented by the Qi Standard.  (D.I. 1, ¶¶ 7-8.)  Magnacharge has alleged that several exemplary products sold, offered for sale, made or imported by Samsung adhere to the Qi Standard and thus, infringe the '402 patent. (D.I. 1, ¶ 21.) Accepted as true, these allegations are sufficient to meet the plausibility standard under *Twombly* and *Iqbal*.  Accordingly, the court must deny Samsung's motion to dismiss.

### C.    The Complaint Plausibly Alleges Infringement with Respect to *All* Defendants, including Harman

In the alternative, Samsung argues that the Complaint should be dismissed as to its subsidiary Harman International, as no infringing product sold or manufactured by Harman is identified in the Complaint.  Relying on *Mayne Pharma Int'l PTY Ltd. V. Merck & Co., Inc.*, C.A. No. 15-438-LPS-CJB, 2015 U.S. Dist. LEXIS 162912 at *2 (D. Del. December 3, 2015), Samsung argues that "Magnacharge is required to identify which particular defendant or defendants are responsible for which allegedly infringing products." (D.I. 10 at 13.)

Again, Samsung misconstrues the legal authority on this issue.  In *Mayne*, dismissal was granted only as to a subsidiary of the primary defendant located outside of the United States after the court found that the Plaintiff could not plead direct infringement by the foreign subsidiary without "alleging facts plausibly identifying sufficient infringing activity by that Defendant that took place within the United States, such as the importation of accused products into the United States." *Id.* at *10.  This concern did not exist with respect to the primary defendant's U.S.-based subsidiary. *Id.* at *8. Nor does it exist in the case of Harman, which is a Delaware corporation.

Magnacharge's pleading of exemplary Samsung products that infringe the '402 patent is sufficient to overcome Samsung's motion not only as to Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc., but also as to Harman as its domestic subsidiary.

## V.    CONCLUSION

The Court should deny Samsung's motion to dismiss for at least the foregoing reasons. To the extent the Court finds otherwise, Magnacharge respectfully requests an opportunity to file an amended complaint to address any aspects of the complaint the Court deems warranted.

DATED: October 10, 2019                             DEVLIN LAW FIRM LLC

                                                    /s/ *James M. Lennon*
                                                    Timothy Devlin (DE 4241)
                                                    James M. Lennon (DE 4570)
                                                    1526 Gilpin Avenue
                                                    Wilmington, DE  19806
                                                    (302)-449-9010
                                                    tdevlin@devlinlawfirm.com
                                                    jlennon@devlinlawfirm.com
                                                    *Counsel for Plaintiff Magnacharge LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 10, 2019, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

*/s/ James M. Lennon*
James M. Lennon
